This time I call case number 2019-60074 Diaz v. Barr. You may proceed Mr. Cherry. May it please the court. My name is Andrew Cherry with General Block and I represent Petitioner Billy Alexander Diaz. I would like to reserve four minutes for rebuttal. The BIA has recognized repeatedly that unreasonable demands are not placed on an applicant to present evidence to corroborate particular experiences, for example corroboration from the persecutor. Yet here the BIA required Mr. Diaz to do just that, present corroborating evidence from his assailants that Mr. Diaz could not reasonably obtain. The immigration judge demanded that Mr. Diaz produce three categories of evidence to corroborate his credible testimony. Evidence that Mr. Diaz's assailants knew he his assailants were able to identify Mr. Diaz, find his home, and evidence that his assailants were in fact members of the Salvadoran police. No one has ever identified what evidence Mr. Diaz could reasonably obtain to satisfy these demands. The letters the government contends could have shed light on the third demand, evidence that his assailants were in fact members of the Salvadoran police, could not actually show any light on what the immigration judge actually wanted to know, which was the true identities of these assailants. These letters could only- Counsel, don't you have a problem in this case though? Because it's not, regardless of whether or not there needed to be corroboration, we have to find that the facts are clearly erroneous. And the BIA carefully explained why every single factual determination went against your client. It wasn't clear that it was the police that were involved in this to begin with, that it's not clear that, and based upon the evidence that was presented. Your Honor, I have two parts to that answer. First, I don't think the standard here is whether the facts were clearly erroneous. The immigration judge's factual findings and conclusions here directly stemmed from Mr. Diaz's inability to satisfy her corroboration demand and her inability to consider all the evidence. So then when she looked at the evidence, she took that into account. So her findings were ultimately infected by this corroboration demand, and that's why we're bringing a legal challenge to the immigration judge's implementation of But isn't it reasonable, it may not be what you would like, but it's reasonable to conclude that it's not the police when your client says it's the police, but his two witnesses don't say it's the police. And so therefore, it could go either way. And so we can't look behind that determination, regardless of whether anything else would have also been helpful to your client. Just what's there doesn't tell, doesn't provide for relief for your client. I think the case here, Your Honor, is that nobody doubts that Mr. Diaz credibly testified that these men appeared to him to be the police. Both the letters, they can only speak on whether these men appeared to be the police or not, and they don't actually say anything either way. They just are silent on that fact. But what the immigration judge wanted to know was whether these men were in fact the police because of the doubts she had from the article. And Mr. Diaz's other evidence showed that his assumption that these men appeared to be the police was reasonable because it was in accordance with... Let's talk about Mario, because Mario isn't just relying on what your client told him. He is somebody who actually saw the people. And so this has to do with the question of what happens in the future if Mr. Diaz goes back home and he never called them police. And isn't that kind of odd? I mean, I looked at the Spanish, varios hombres, that's not police. Susfiosos, that doesn't look like police to me. Admittedly, I'm hardly an expert in Spanish. But the translation says very suspicious types and various men. And it would seem like if these were police officers, you would say that. Police officers are looking for you, my friend. Your Honor, not necessarily. The fact that he described them as suspicious men does not preclude the fact that they are police. And we have to remember that Mario was sending this letter to Mr. Diaz, who was housed in a federal detention facility in the United States. Mr. Diaz knows who the men who were these men were members of the police would not provide any new information to Mr. Diaz. And Mario very well could have been concerned about identifying, you know, the police are searching for Mr. Diaz. And what if this letter gets intercepted? It's going to a federal detention facility, who else is going to read it? So the fact that Mario did not affirmatively identify them as a police, I don't think rules out that they were the police as Mr. Diaz has credibly tested. That gets into the sort of clearly erroneous concept, which is you could construe it the way I said earlier, you could construe it the way you just said. But there's nothing that requires either construction of this. And the same with the wife who would have been told by Mr Diaz the facts. And she also doesn't say police. So it would seem that that does that undercuts what he's saying. Maybe it doesn't undercut it. Maybe it does, but it arguably does. And that again would be something we have to give deference to, right? Well, I think here in the first instance, we should look to the fact that Mr. Diaz credibly testified that these men appeared to be members of the police. The immigration judge's concern arose from this article, the La Prensa Grafica article that said they may have been police involved with gangs. And that's why Mr. Diaz supplied this other evidence, the country conditions evidence, the expert report, to show that his assumption that these men who identified themselves as police were wearing police uniform shows that they also acted in accordance with how the police act in El Salvador. And that's why he viewed them as members of the police. I think the Garcia case in this circuit is applicable there. There is a site in our brief, there's a similar situation where there was extortion demands, and there were some beatings and the petitioner his assailants and extortionists as members of the police, the immigration judge said, well, just because they look to be members of the police, there was no evidence they actually were members of the police, the BIA affirmed on that ground. And then this court expressly overturned that decision saying that was not the standard to show that they were in fact police officers when they appeared to him to be police officers. Counsel, even if you are right on the police point, let's just spot you the police point for right now. The BIA also believes that it's appropriate to deny relief based upon the entirety of the record, that the applicant has not established that it is more likely than not that he will be tortured on on return. The court, the BIA determines there was no clear error about the future mistreatment claim, because this arguments that the expert gave was too speculative. So why isn't that a legitimate conclusion that we have to defer to, even if we could have found that the BIA could have that the IJ and then the BIA could have said that, that the expert was reliable, and we believe the expert he chose not to. And so why don't we have to defer to that? Your Honor, I think if you look at the immigration judge's decision, these conclusions all stem from the immigration judges demand that Mr. Diaz produce this corroborating evidence as to the identities, how they were able to track them down and find his home. And but the BIA decision does not depend upon that. It just says looking at what's here. It was a you could find that they can't they didn't show that they'd be tortured because what was presented was too speculative. What your client presented with this expert in the car, this theory is just too speculative, given the current state of the conditions and the amount of time that's passed, even if it was indeed the police. And Your Honor, I think there are two parts to my answer. First, the BIA did affirm the immigration judges corroboration demand and conclusion that it was reasonably expected for Mr. Diaz to obtain this corroborating evidence, which didn't provide any analysis on that point. It did affirm on that point. And Mr. Diaz was not able to provide corroborating evidence. And second, I think the relevant inquiry here is not whether these men are still searching for Mr. Diaz in 2020. Now, in 2018, the immigration judge issued her evidence. And that's when he submitted one of these letters from Mario that said the man had showed up at his house. So we know that at least a few years after his assault, that some people were still looking for him. So the BIA's conclusion on this point also directly stemmed from the immigration judges. Well, actually, it says based upon the entirety of the record, it doesn't say because there was no corroborating evidence, we're going to defer to this because there should have been corroborated. It just says what is there, the record that's there, it's so that they find that it's too speculative. But okay, let's talk about the corroborating. I don't believe there's any requirement that the immigration judge says, now is your time to bring forth all your corroborating or to explain why you can't corroborate. That's just a duty on the on the petitioner, isn't it? So it is a duty on the petitioner to explain why he cannot supply corroborating evidence. And he did. So he challenged it in his brief before the BIA after the immigration judge issued this opinion, expressly identifying the corroborating evidence that he should reasonably obtain. If you look through the transcripts of the hearing, at no point does immigration judge explain why this corroborating evidence is reasonably available when he had the opportunity immigration judge's responsibility. I think that it's kind of a chicken and egg thing, isn't it? Your client's duty to say, and we have corroborating evidence that supports my testimony or else we don't because there's no way to get it. But your honor, really, please believe me. It seems like that's your client's obligation in the first instance, not to have the judge explain why it's not good enough. Well, your honor, here, the immigration judge asked some questions of Mr. Diaz that were the same as the corroborating evidence demands she ultimately put in her opinion. He answered those in his hearing. And then when she laid out the corroborating evidence she demanded in the hearing or in her in her decision, Mr. Diaz challenged the BIA, the BIA's decisions and SMJ and LAC explain that the immigration judge is supposed to engage in an analysis of this and the BIA is supposed to then analyze the immigration judge's conclusions that this evidence is reasonably available. It did not do so. And just as a matter of practicality, if Mr. Diaz doesn't know that his own explanations and answers to the immigration judge's questions did not satisfy her and she wants additional corroborating evidence, he can't then explain why that evidence is a bit is not available if he does not know what evidence the immigration judge wants or even on what topics. So he was able to do that before the BIA because he saw the immigration judge's decision, which spelled this out. And then he's challenging that again here for the same reasons. And there's a couple cases in other circuits which have been faced with similar situations, such as the Saravia case and the Chukuthu case in the Third Circuit. They're both in the brief where the applicant there was not able to, the immigration judge didn't give him the opportunity to explain until after she issued her decision why the corroborating evidence wasn't available. And so he was able to challenge that on appeal, but he simply could not do so when he didn't know what the immigration judge's exact corroboration demand was and that his explanations in the record for how the police could track him down for how why he thought these people were police and how they could find him and how they knew about the shooting weren't. In this case, we're on essentially appeal number two. So Mr Diaz knew from the first process that the I. J. Was very laser focused on this issue of corroboration. So when he had the chance to go back, it's not like that's a surprise to him. He knows that going in and yet chose not to offer any more evidence from himself or his, you know, Mr Mario or the walk or any of that. He put on the expert evidence. I understand that country conditions, but he did not himself offer any more evidence to say, Look, I'm terrified to try to go out and find out who these guys are. I can't send Mario down to the police office and look around and see if any of them were there. I'm scared. He didn't put on any evidence like that, but he knew that this was something that I. J. Was concerned about, right? Well, the 22 parts to answer your honor. First, as you acknowledge, he did submit the country conditions report and expert report to corroborate what he could, and he didn't submit any further testimony because he already had laid out his full story to the immigration judge. He found it credible in the colloquies in the previous hearings. He stated that he was. He didn't go to the police because he was afraid he left the plane. Even the letter from Mario that Mario had said men are coming in the house, and I was afraid to tell me he explained all this news here already. So there was no point in having another hearing where he laid out the exact same testimony that was already part of the record. Immigration judge already found credible. How in the back and forth in the hearings with his attorney on remand that they decided not to have another additional live testimony from him because it would be repetitive of the testimony he already submitted. There was simply nothing else for him to say. He had told his entire story. He had answered immigration judges questions on these very points, and he couldn't bring in evidence from his assailants. He had fled the country because they threatened to kill him and cannot be expected to call them into court to provide an affidavit that they were still tracking down how they found him. And what is the date of Mario's letter? So Mario's letter isn't dated, but if you look at the record, we can tell from the it's sometime in early 2017 in the March 28th hearing transcript, he mentions the evidence that has already been submitted. But the letter isn't one of them, and he says he's obtaining additional evidence. Then the certificate of translation for the I see my time is up, but may answer the May. The certificate of translation for the letter dates that as May 2017. That's page 508 of the R. O. A. And then on page 4 33 of the R. O. A. At the July 5th 2017 hearing, he discusses the Mario letter and says that he sent it to the judge not too long ago. So we can tell from the first hearing when the letter is not part of the record, but he says his opinion, additional evidence. And it is part of the record, but the letter must have been obtained sometime in that gap. But the letter itself doesn't say when the event occurred. It does not. Thank you, Counsel. Um, we have your argument. You save time for rebuttal. Thank you, Laura. Good morning, Your Honors. May it please the court? We can't see you anymore, and we can't hear you anymore. We could see you and hear you when you said good morning, Your Honors. May it please the court? And then you disappear. I'm sorry, Your Honor. I'm pressing start video, but it's not. It's it's not. It's not working. All of a sudden, audio is fine with us. It's long as you're okay with that. So, okay, I apologize. I don't know what's what's going. What's going on? We can hear you now. Okay, you just want to make your if you if you have the little thing in the bottom left, the little camera, it's got an X line through it. Then just click on that, and it should give you back. I am, but it find the whole argument of your opposing counsel. So but we're gonna just let you go with audio unless there's some objection from someone which I'm not hearing any. And, Miss Trice, if you could start the clock back because his time has been used with us discussing his, um, technical problems. You may proceed with your argument now. Thank you, Your Honor. May it please the court? Kosei Yugimori for the United States. As stated in the government's 28 J letter, this court does have jurisdiction to review the petitioner's denial of a cat deferral, and the criminal alien bar section 12 52 A to C is not at all implicated. Nevertheless, substantial evidence does support the denial of cat deferral in this case, and this petition for review should be denied for three reasons. First, the evidence does not compel the conclusion that petitioner submitted sufficient corroborating evidence in order to meet his burden of proof. Second, the evidence does not compel the conclusion that the petitioner will more likely than not be tortured in El Salvador. And third, the evidence does not compel the conclusion that petitioner demonstrated sufficient state action to entitle him to deferral of removal. Petitioner claims in this case, I asked a couple of questions. Just I have a couple questions were off the bat. Yes, has no bearing on this because this is already a person who is a criminal alien removable. Correct? Look, bearing on this case. Is that correct? If your honor is referring to matter of O. F. A. C. Yes, this that decision has no bearing on this case, Your Honor. Um, this is and this is deferral of removal based upon cat. Correct? That's correct, Your Honor. And under cat, you can still be removed to some other place if it is determined that you, um, would face torture in your home country. Correct? That is correct, Your Honor. Yes. And then my last question relating to this procedural posture is I don't see any discussion about relocation within the country. Most of these opinions contain some sort of discussion in the by the B. O. B. I. A. That it would be in inappropriate that the person hasn't shown that they could relocate. Um, relocation still applies in this context, but I assume that perhaps the B. I. A. Didn't discuss that because that gets smack dab into the issue of the national card and whether all over the country they could hunt him down. Is that that what is your understanding of that? Well, there are several alternative holdings, but the immigration judge did consider relocation as a factor in. I did not consider that. Well, the B. I. A. Uh, agreed with the immigration judge, and this court reviews both the board's decision and the immigration judge's decision to the extent the board adopts the immigration judge's decision. And relocation is certainly a factor, um, in determining whether torture is more likely than not. And in that regard, the identification card, there are two findings by the immigration judge. One is that just merely having the identification card by itself does not mean that the petitioner will more likely than not be tortured. And the evidence doesn't compel that conclusion, even considering the petitioners expert report because the experts report, as the immigration judge stated, provides no explanation as to why merely possessing the identification card would result in more likely than not even assuming that the police have his identification card. There's no compelling evidence that the police are looking for him now. Um, the letters he submitted from his wife and friend Mario do not identify the bad actors as police, and there's no compelling evidence that the police are looking for the petitioner. And in that regard, it should be emphasized here that the petitioner does not assert an acquiescence theory. He does not claim that the persons he fears are impersonating the police. He is not claiming that private persons will torture him with the acquiescence of the police. In fact, if you look at his brief at page 37 to 39, that's precisely one of his assignments of error is that the board and the immigration judge gratuitously analyzed his case under acquiescence when, in fact, all he was arguing his soul claim of harm is that the police will harm So acquiescence is waived and off the table. Nevertheless, the evidence wouldn't compel the conclusion that the police would acquiesce when there is counterbalancing evidence to some of El Salvador struggles with combating police corruption and abuse. Um, backtracking to addressing the corroboration issue, Your Honor. Um, the petitioner argues that he witnessed a crime. Oh, to police. Two persons dressed in police uniforms came out of an alley, shot out a taxi, killed its occupants, took a look at the petitioner and then escaped on a motorcycle. Petitioner's theory of harm is that, uh, he was targeted because of having witnessed this incident, and he claims that 11 days later, uh, three persons dressed in police uniforms came to his home, beat him, told him, You know why we're here, but nothing really more than that on told him to disappear from El Salvador. However, that theory of harm, as your honors has, uh, have stated, um, is undermined by the evidence that petitioner himself submitted. The newspaper article, for example, uh, that the shooters were not, in fact, police officers that they were. Um, it was a gang quarrel. And furthermore, the letters submitted by the petitioner's wife and, um, friend described the bad actors as either suspects or vermin or suspicious types and never referred to them as the police. So the immigration judge reasonably required further corroboration in this case, and the petitioner raised the argument on appeal that he should not be required to ask his assailants for corroboration. And that's true. Uh, and the board expressly considered that argument and rejected it and agreed with the immigration judge that the petitioner was required to submit reasonably available corroborating evidence and two points on that your honor. And as your honor has stated under matter of L. A. C. The board and the immigration judge are under no obligation to specify which corroborating evidence is necessary in order for the applicant to satisfies burden of proof. A second point here is that, as the board stated, the immigration judge did give an indication of what kind of corroborating evidence might have satisfied the petitioner's burden of proof. And those were three. One is evidence that the assailants knew that the petitioner witnessed the shooting. Second, how evidence about how the assailants were able to find him if he had not spoken to anybody or reported the incident to the police. And third, that the assailants were, in fact, police officers. And the petitioner submitted the three letters in support. But the board and the immigration judge both found them insufficient for very particular reasons. That is, it did not identify the suspects or the bad actors as police officers. And if it had, in fact, it would have corroborated every one of those three areas of corroboration identified by the immigration judge and the board. For example, the immigration judges request that there be corroboration that the assailants were actually police officers. Well, the letter from Mario, the undated letter, says that suspicious types have been looking for him, I believe, or I think that they're the ones that tried to kill you. Now, if those suspicious types, if we take that language out and make them police officers, well, that would corroborate his claim that the persons who tried to kill him, i.e. his assailants, were police officers. And the second point of corroboration, the immigration judge says, you know, there was no evidence submitted about how the assailants were able to find him a week and a half later. Well, if you look to the wife's letter, the wife's letter says petitioner witnessed a shooting and the suspects put a bounty on his life. Well, that explains if we change suspects for police, that would explain how they found him. There's a bounty on his life. There was an organized effort by the police to find him. So that would corroborate that aspect of the claim. And thirdly, whether the assailants, you know, how the assailants knew that he had witnessed a shooting. Well, again, the wife's letter says exactly that, Your Honor. She could have corroborated that aspect of the claim. So, you know, having submitted declarations by his friend and wife before, necessarily, the evidence was reasonably available. He could have either put his wife on the stand and asked what she had been told in the past about these incidents. Or he could have asked, you know, further declarations from his wife and friend for clarification on what they meant by suspects or suspicious types or, quote unquote, vermin. So in that regard, the evidence does not compel the conclusion here that petitioner met his burden of proof by by submitting reasonably available corroborating evidence. And this petition for review should be denied just on that basis. Alternatively, even if this court were not to consider the corroboration issue, the evidence does not compel the conclusion that petitioner will more likely than not be tortured in El Salvador. By the time of the immigration judge's decision, it had been four years since the incidents, and there is no compelling evidence that anybody is currently looking to torture him. Again, his his friend, the dated letter from his friend has absolutely no mention of anybody looking for the petitioner at this time, and not even the mention of the police. And he describes the bad actors as vermin and distinguishes them from the police saying things like they act as if they are the police. So clearly, if anybody is looking for them, it is not the police and doesn't support the petitioners theory of the case that the police are after him to torture him. And in addition to that, as as as discussed the relocation issue, that is a factor. And that factor also does not compel a finding in the petitioner's favor and also constitutes substantial evidence that petitioner will not more likely than not suffer torture. And again, alternatively, even if the likely excuse me, this is judging. Are you saying that the B I A on page five basically accepting what the I J said about the future is an that he can move somewhere in El Salvador, and they didn't mention it specifically. But are you saying it's a broad acceptance of the I J s finding? Yes, Your Honor. It agrees with the I J s finding, and the I J s finding is really two part. One is whether the I D itself is sufficient evidence to prove that he would more likely than not be tortured. And two is that even if the police had his I D on could find him, the police aren't actually looking for him. So there's again no likelihood of future harm in that regard. So this petition for review could be denied on those two alternative basis. Your Honor. One is that he failed to submit sufficient corroborating evidence, and two is that he failed to submit compelling evidence of future torture. But even setting aside those two grounds, Your Honor, this petition for review could be denied for a third reason, and that is that the petitioner has failed to submit compelling evidence of sufficient state action in this case. One is that he has not shown compelling evidence that his torturers or the people he fears will torture him are actually the police. So in that regard, he has not shown government torture. Alternatively, as mentioned before, petitioner waives the theory that the persons he fears were private persons to which the government would acquiesce to torture. And so just based on the petitioner's failed to submit sufficient state action in this case, this petition for review could could be denied in that in that regard. And just to note finally, just for purposes of being complete, even if this court were not to consider his affirmative waiver on the acquiescence issue, the evidence wouldn't compel the conclusion in his favor. Again, while there's evidence of police abuse, military abuse and criminal organizations colluding with the government in the record, there is also record evidence that the Salvadoran government is undertaking significant efforts to reform its police. In fact, the first few pages of the 2017 U.S. Department of State Country Reports just describes those efforts, you know, going after persons who have abused their authority. And even the petitioner's own expert report states that recognizes or acknowledges these efforts and says that effectiveness have been to varying degrees. Now, that is not a glowing assessment of El Salvador's current situation. However, it does not compel the conclusion that the government would acquiesce to any private acts of so on this record, Your Honor. So in some, the evidence does not compel the conclusion that petitioner submitted sufficient corroborating evidence to meet his burden of proof. The evidence doesn't compel the conclusion that he's shown a likelihood of future torture. And the evidence alternatively does not compel the conclusion that he submitted sufficient evidence of state action. And for those reasons, this petition for review should be denied. If there are no further questions, the government will see the rest of this Thank you, Mr. Yugamori. Mr. Cherry, you have saved time for rebuttal. Thank you, Your Honor. I'd like to address two points that just came up first as to relocation. That was expressly the immigration judge in the first instance expressly concluded could relocate. That was actually one of the reasons the BIA remanded initially, and she did not reach the same express conclusion in her second decision. She made some mention that he could she noted that he had provided this expert report, but then said that it concluded without providing any explanation that the since the PNC officers had his ID card, they could track him down. And that's just not true. The expert report did provide an explanation for how the police could track him down. And it was error for the immigration judge to just disconsider it and claim it didn't provide an explanation that did in fact provide. And second, the key point that the immigration judge was looking for in her corroborating evidence demand was not whether or not these men who assaulted Mr. Diaz appeared to him to be police officers. She acknowledged his credible testimony on that point, but whether they truly were police officers and the letters from Mario and his wife couldn't possibly speak to that. Mario could only speak to if men showed up dressed as police officers that meant we're looking for him appeared to be police officers, but he could not speak to whether they were, in fact, police officers or they were just gang members dressed as police officers. Let me ask you this. I mean, this is a small town. Do people not know who the police are in this small town? I mean, I know who some police officers are in a big town that I live in. So is that not a possibility to know who people are that are police as testimony? He was asked this question. He claimed he does know some of the police officers in his town, but the police officers involved in the shooting and the ones who showed up at his home were not these officers he had seen around recognized. And then one other thing that I don't think has been brought up, but I'm just curious about is this kind of information available on on the Internet? You know, the employees of the country or the employees of the local police or whatever. I'm not entirely sure, Your has not been mentioned in the record anywhere. No, it hasn't been mentioned in the record, and I believe even in the United States, it is. Parents don't always reference. You know, here's the name and picture of every officer on their website. They'd state that these police officers were dressed in uniforms of the national police, the PNC, and so it very well could have come from out of town or just had not been the ones that Mr Diaz had seen before. Thank you. This court has addressed El Salvador and Garcia and specifically about the involvement of the police on etcetera. Garcia, similar attack, except they, um, he was able to identify he was able to read the bag. He didn't identify the individual there in uniform, but he read the names off badges, etcetera. So that the fact that the intermersed police and gangs this as a matter of record throughout these cases, the that's a context in which you're asking him to identify. Give me more proof that these people were, you know, we're actually a police officers. Um, your honor, Mr Diaz did testify that it's not just that these men were wearing police uniforms. He saw the names of two of them on their badges when they came to his home. Um, they identified themselves as police officers. We agree that this is similar to the Garcia case where police officers, there was no way for him to ascertain his true identity, which look at the corroborating evidence. That is exactly what immigration judge wanted to know, and it was just not possible for him to reason to obtain the evidence without getting evidence from his assailants. I see my time's up. There are no further questions. Thank you, Mr Cherry. We appreciate your argument and Mr. You've Morris arguments in this case is submitted. Thank you very much. Y'all have a good day. Thank you. Thank you. I believe this concludes um, the arguments for today, and the court will stand in recess till tomorrow morning at nine a.m. Thank you.